## REPUBLIC INS. CO. v. DICKSON.
### No. 2504.

Court of Civil Appeals of Texas. Beaumont. Feb. 22, 1934.

Appellee's First Motion Overruled March 7, 1934.

Appellee's Second Motion and Appellant's Motion Overruled March 14, 1934.

Smithdeal, Shook, Spence & Bowyer, of Dallas (J. Louis Shook, of Dallas, of counsel), for appellant.

Dallas Ivey, of Center, for appellee.

WALKER, Chief Justice.

On the 9th day of July, 1932, appellant, Republic Insurance Company, issued and delivered to appellee, J. W. Dickson, its policy of fire insurance in the sum of $1,200 for a premium of $11.75 paid by appellee, whereby it insured for a period of one year against loss by fire appellee's certain dwelling house situated in the town of Teneha, Shelby county. When the policy was issued appellee and his family were occupying the house as their home. Shortly thereafter he and his family moved out of the house, and on July 14th following L. A. Rivers moved in as his tenant and so occupied the house until the 22d day of the next September when he moved out. From that day the house remained vacant until October 14, a period of twenty-two days, when it was totally destroyed by fire. Appellee brought this suit against appellant in the district court of Shelby county to recover the principal amount of the policy, interest, and costs of suit, pleading the issuance of the policy, the destruction of the house by fire, etc. Appellant answered by general and special demurrers and general denial and specially that the policy contained the following warranties which appellee breached, thereby rendering the policy absolutely void: (a) The insurance was effective on the house only "while occupied by owner and not otherwise as a dwelling"; (b) "this entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if a building herein described, be or become vacant for a period of exceeding ten days or unoccupied for a period of exceeding thirty days." To this answer appellee replied by pleas of waiver and estoppel; appellant answered by excepting to the sufficiency of these supplemental pleas. Judgment was for appellee for the amount sued for on the verdict of a jury finding that (a) the house in question was not occupied by the owner as a dwelling from July 15, 1932, until October 14, 1932, the date of the fire; (b) that the house was not occupied by the owner as a dwelling on October 14, 1932, the date of the fire; (c) the house was occupied by L. A. Rivers as a tenant of appellee "from fourteen days of July, 1932, to twenty-two days of October, 1932"; (d) the house was not vacant "for more than ten days next preceding October 14, 1932, the date of the fire"; (e) appellee's local agent, Jack Motley, knew that the house was not occupied by the owner; (f) this agent first acquired this knowledge on September 3, 1932; (g) this agent was not informed by appellee that the house in question was occupied by L. A. Rivers as his tenant.

█ The warranty covering the occupancy of the building was as follows: "$1,200.00 on the One story Shingle roof Frame Building and additions attached thereto, including foundations, permanent piping and fixtures for heating, lighting and water service, while occupied by owner ('owner' or 'tenant') and not otherwise, as a dwelling."

It thus appears that the policy was to be effective while the occupancy was either by "owner" or "tenant," and therefore the insured did not breach the warranty by renting the house to L. A. Rivers and permitting him to occupy it as his tenant. The explanation for writing the policy in this form may be found in the following testimony of Mrs. Dickson, wife of appellee:

"Q. Mrs. Dickson, you are the wife of the plaintiff in this case, W. J. Dickson? A. J. W.

"Q. J. W.? A. Yes, sir.

"Q. Where do you live now, Mrs. Dickson? A. Gladewater, Gregg County.

"Q. On or about the 9th day of July, 1932, where did you live at that time? A. I lived in Tenaha.

"Q. Did you live in a house that is described here as being five blocks southeast of the square? A. Yes, sir.

"Q. Well, about that time, did you go and have a talk with Mr. Jack Motley about anything particular? A. I did.

"Q. About that house? A. I did.

"Q. Just tell the jury what it was. A. On the 9th day of July, I went to the bank and asked Jack Motley to insure my house, and he did.

"Q. Just go ahead and tell the jury what was said between you and he. A. He asked me when we were planning to move—we were planning to move to Gladewater, and I told him in just a few days—I did not know what day—and he asked—and I asked him to have my house insured, and he asked did I have anybody to go into it, and I said No, and he said 'if I know or hear of anyone, I will

bring them down', and he did on Monday or Tuesday of the next week—He brought Mr. Kamack down to my house—he ought to know when—On Saturday—and we moved on Thursday, I think, and it was Monday or Tuesday or Wednesday that Jack brought Mr. Kamack down there to the house.

"Q. Did you rent the house to Mr. Kamack? A. No; because he would have to go back to El Dorado.

"Q. Who did you rent the house to? A. Aubry River."

We overrule all assignments and propositions on the issue that the change of occupancy from "owner" to "tenant" breached one of the express warranties of the policy.

■■ Under the statement made above the insured house was vacant a period of twenty-two days, from September 22d to October 14th. Appellant pleaded that it was vacant for that period of time, and appellee admitted the fact in his pleadings. The testimony was without controversy that it was vacant. Mrs. Dickson testified that, when she moved out in July, she left one old piece of furniture in the house, which was probably there when the house was burned. But her testimony was that she and her husband had moved to Gladewater, Gregg county, and there established their home. This testimony by Mrs. Dickson did not raise an issue that the house was not vacant, but only confirmed the testimony of all the other witnesses. 26 C. J. 215, title, "Fire Insurance," § 261. Notwithstanding this state of the pleadings and the evidence, the jury found, as above stated, that the house was not vacant "for more than ten days next preceding October 14, 1932, the date of the fire." On appellant's assignments against this finding it is set aside and the fact found, as it actually was, that the house was vacant from September 22d to October 14th.

This vacancy made the policy absolutely void. The law on this proposition is thus stated by 24 Tex. Jur. 958, art. "Insurance": "Undoubtedly, a contract of fire insurance validly may contain a provision that the policy shall be void, or that the insurer shall not be liable, if the building is vacant or unoccupied beyond a stated time."

The text is well supported by the following authorities: Galveston Ins. Co. v. Long, 51 Tex. 89; National Union Fire Ins. Co. v. Richards (Tex. Civ. App.) 278 S. W. 488; Commercial Union Assur. Co. v. Dunbar, 7 Tex. Civ. App. 418, 26 S. W. 628.

■ As the breach of the warranty against vacancy rendered the policy absolutely void, it was not necessary for appellant to plead tender or offer to return to appellee the unearned premium on his policy as part of and in connection with its plea of invalidity. In Phenix Ins. Co. v. Willis, 70 Tex. 12, 6 S. W. 825, 8 Am. St. Rep. 566, it was held that an insurance company "need not offer to return the premium paid on a policy before insisting on its invalidity by reason of breach of conditions contained in it." See, also, Alsup v. Hawkeye Securities Fire Ins. Co. (Tex. Civ. App.), 300 S. W. 223, 225; Interstate Fire Ins. Co. v. Sorrells (Tex. Civ. App.) 295 S. W. 242; Veal v. Fire Ass'n of Philadelphia (Tex. Civ. App.) 30 S.W.(2d) 715, 721; Phenix Ins. Co. v. Willis, 70 Tex. 12, 6 S. W. 825, 8 Am. St. Rep. 566; Connecticut Mutual Life Ins. Co. v. Rudolph, 45 Tex. 454. It follows under the proposition just discussed that the trial court correctly overruled appellee's exceptions to appellant's special answers of breach of warranties.

■ The controlling point in this case is whether or not appellant was estopped to assert the invalidity pleaded by it or whether or not it had waived the breach of the warranties thus pleaded. The special exceptions urged against appellee's pleas of waiver and estoppel, to the effect that they were indefinite and uncertain as to the facts and circumstances relied upon to constitute waiver and estoppel and as to the agency by which these acts were committed, should have been sustained; but the rulings thereon were immaterial, in that appellant was fully advised during the trial of all circumstances relied upon by appellee and of the names of the agents who committed the acts of estoppel, and because it further appeared that appellant had these very agents in court as witnesses in its behalf; and there is no suggestion of surprise or injury, resulting to appellant from the overruling of its special exceptions.

The additional facts in support of appellee's pleas of waiver and estoppel are as follows: Tenaha was a small town with a population of five or six hundred. On the 7th day of October, after the house became vacant on September 22d, it was inspected by Mr. Jack Motley, appellant's local agent at Tenaha, who wrote the policy, and Mr. Fred Pierce, appellant's special agent whose duty it was to visit the local agencies and inspect their risks. By this inspection, of course, Mr. Motley and Mr. Pierce, in their capacities as appellant's agents, learned that the house was vacant; but they did not learn from this inspection, and were not

otherwise informed, when it became vacant, that is, whether or not at the time of their inspection it had been vacant one day or ten days, and there was no proof that this information was acquired by them at any time before the house was destroyed by fire. At the time of their inspection they parked their automobile immediately across the street from this house, in the driveway of Mrs. Butler, whom Jack Motley well knew and who saw him and Mr. Pierce while they were inspecting the house. She knew when the house became vacant, and, had they inquired of her, she would have told them; but they failed to make this inquiry and to make any effort of any kind to ascertain that fact. The record is conclusive that after the inspection and before the fire appellant made no effort to cancel the policy, did not notify appellee that he had breached the vacancy warranty of his policy, but continued to act in all respects as if the policy was in full force.

■■ The law is that: "A waiver or estoppel may be predicated upon the silence or inaction of the company where it is apt to mislead and does mislead insured." 32 C. J. 1346; British America Assur. Co. v. Francisco, 58 Tex. Civ. App. 75, 123 S. W. 1144; Alabama State Mutual Assur. Co. v. Long Clothing Co., 123 Ala. 667, 26 So. 655. In this state it has also been held that, where the company acquires knowledge of facts that operate to forfeit its policy and does not cancel the policy, but retains the unearned premium, it will be held to have waived the condition and will be estopped to assert the forfeiture. Ætna Ins. Co. v. Eastman (Tex. Civ. App.) 236 S. W. 763: Hartford Fire Ins. Co. v. McLemore, 7 Tex. Civ. App. 317, 26 S. W. 928. Silence on the part of the company when, had it acted, the insured could have secured other insurance, as appellee could have done in this case, will operate as an estoppel or waiver of the breach of the warranty. Glasscock v. Des Moines Ins. Co., 125 Iowa, 170, 100 N. W. 503; Lutz v. Anchor F. Ins. Co., 120 Iowa, 136, 94 N. W. 274, 98 Am. St. Rep. 349; Patterson v. American Ins. Co., 164 Mo. App. 157, 148 S. W. 448.

On these general principles of law we conclude that, if Mr. Pierson and Mr. Motley knew the warranty against the vacancy had been breached and then permitted their company to retain the unearned premium, and by their silence prevented appellee from securing other insurance, appellant would be estopped, as a matter of law, from asserting the breach of the warranty against vacancy,

and would be held, as a matter of law, to have waived the breach.

■■ But to constitute a waiver or estoppel the insurer must have knowledge of the facts, quoting from Dossett v. Franklin Life Ins. Co. (Tex. Com. App.) 276 S. W. 1097, 1099: "The notice or knowledge which waives, in legal contemplation, must be of the falsity as to the identical fact represented to be true. This notice or knowledge must be as broad, as comprehensive, as extensive, as the representation. This means that the knowledge of falsity must extend to so much of the representation as is material. Both the knowledge and the representation must pertain to the same material fact."

As applied to the facts of this case, mere knowledge of the agents, acquired from their inspection of the house or otherwise, that it was vacant on the 7th of October, did not operate as a waiver or estoppel; such notice must have gone further and advised them that it had been vacant for more than ten days at the time of their inspection. This conclusion necessarily follows because the policy gave appellee the right to hold his house vacant for ten days, and certainly no presumption arose from the vacancy on October 7th that it had been vacant for more than ten days.

■ The issue was clearly raised against appellant's agents that, in the exercise of ordinary diligence at the time of their inspection of the building, they could have discovered that it had been vacant for more than ten days. The fact that Mr. Jack Motley, appellant's local agent, could have acquired this essential information cannot be imputed to appellant. As to him, the rule is thus stated by 24 Tex. Jur. 816, title, "Insurance": "Nor is it sufficient to bind the insurer that its agent might have learned through the exercise of ordinary diligence, of facts material to the risk." Continental Ins. Co. v. Cummings (Tex. Civ. App.) 95 S. W. 48; same case, Supreme Court, 98 Tex. 115, 81 S. W. 705; Ætna Ins. Co. v. Holcomb, 89 Tex. 404, 34 S. W. 915.

■■ But this principle does not control the conduct of the special agent, Mr. Pierce. He was sent by appellant to Tenaha for the specific purpose of inspecting this house and the other houses covered by its policies. It can be reasonably said that one of the purposes of his inspection was to ascertain whether or not appellee was performing his part of this insurance contract. The warranty against vacancy was one of the most material provisions of the policy, as it af-

fected both appellant and appellee. On this proposition it must be borne in mind that Mr. Jack Motley, through information acquired in his capacity as appellant's agent, knew that appellee was at that time living in Gladewater, Gregg county, and that the house was a "tenant house," which information was imputed to appellant and to its special agent, Mr. Pierce. Being a corporation, appellant could act only through its officers and agents. In making this inspection, Mr. Pierce was acting as a general agent, delegated with the highest authority appellant could bestow upon him for this purpose. We think the law required Mr. Pierce, at the time of his inspection, to exercise ordinary diligence to ascertain whether or not the warranties of the policy had been breached, and the facts raised an issue against him as to whether or not he had discharged this duty. All the issues submitted to the jury were upon undisputed facts; that is to say, there was no controversy whatever in the testimony as to any issue thus submitted. By many of its propositions appellant complains of the refusal of the court to submit the issues of waiver and estoppel. The facts found by the jury were insufficient to support the trial court's conclusion against appellant on these issues. The determining issue in this case was whether or not Mr. Pierce, at the time of his inspection, in the exercise of ordinary diligence, could have discovered that the house had been vacant for more than ten days. We think appellant's exceptions were sufficient to call to the court's attention this omission in the charge and therefore, under Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084, the judgment is without support.

For the reasons stated, the judgment of the lower court is reversed, and the cause remanded for a new trial.

On Rehearing.

█ Appellant's motion to correct the statement of facts in relation to the conditions of the warranty of occupancy is overruled. We have no power to correct a statement of facts, properly certified to us from the lower court. On that proposition this court said in Janes v. Gulf Production Co., 15 S.W. (2d) 1102, 1104, citing Commission of Appeals opinion in Gerneth v. Lmbr. Co., 300 S. W. 17: "Only the lower court has jurisdiction to correct such a mistake." An order by the lower court correcting the statement of facts should be made before the case is submitted in the appellate court. How-

ever, appellant is not prejudiced by this order, as the judgment of the lower court is reversed on all issues and appellant can show the true recitals of all warranties and other conditions of the policy upon another trial. Appellant's motion for rehearing is also overruled. Appellee's motion to withdraw his second motion for rehearing, filed on March 10th, is granted.